KATHRYN BARCROFT, *(PHV)*
kbarcroft@fedemploylaw.com
ARIEL E. SOLOMON, *(PHV)*
asolomon@fedemploylaw.com
SOLOMON LAW FIRM, PLLC
300 Great Oaks Blvd Ste 312
Albany, New York 12203
Tel: (866) 833-3529
Fax: (202) 688-1896

MAJED DAKAK (SBN 271875)
mdakak@kbslaw.com
TREVOR STOCKINGER (SBN 226359)
tstockinger@kbslaw.com
KESSELMAN BRANTLY STOCKINGER LLP
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, CA 90266
Tel: (310) 694-5833
Fax: (310) 307-4570
*Attorneys for Plaintiff*
KATHRYN SPLETSTOSER

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN SPLETSTOSER, as an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN E. HYTEN, as an individual,<br><br>Defendant. | Case No. CV 19-10076-MWF (AGR)<br><br>Judge: Michael W. Fitzgerald<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Kathryn Spletstoser ("Plaintiff"), by her attorneys, Solomon Law firm, PLLC, Kathryn Barcroft, Esq. and Ariel Solomon, Esq., allege the following:

## OVERVIEW

1. Plaintiff was sexually assaulted by John E. Hyten ("Defendant"), on December 2, 2017 in a hotel room in Westlake Village, CA.

2. Both parties were members of the armed forces at the time of the attack.

3. Neither the Defendant's conduct nor the Plaintiff's injury were incident to their respective military service.

4. The sexual acts committed by Defendant were beyond the scope of his employment.

## JURISDICTION AND VENUE

5. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. The parties are citizens of different states, and the amount in controversy exceed Seventy-Five Thousand dollars ($75,000.00), exclusive of interest and costs.

6. This action arises under the laws of the State of California.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims alleged herein occurred in this district.

## PARTIES

8. Plaintiff Kathryn Spletstoser is a Colonel with the United States Army (retired). She is a citizen of the United States and currently resides in Alexandria, VA and is domiciled in Virginia.

9. Defendant John E. Hyten (Defendant) is sued in his personal capacity.

10. Defendant previously served as the Commander of the United States Strategic Command ("STRATCOM") from approximately November 3, 2016 until

September 26, 2019. He is a citizen of the United States and his work address is at the Pentagon in Washington, D.C.

11. Upon information and belief, Defendant currently resides at Joint Base Anacostia-Bolling, Washington, DC.

12. Upon information and belief, Defendant is domiciled in Colorado Springs, Colorado.

## FACTS AND PROCEEDINGS

13. Plaintiff first served in the Armed Forces in 1989, as a reservist with the United States Army, where she was an Airborne Parachute Rigger.

14. Upon receiving her Commission as a Second Lieutenant in 1992, Plaintiff was selected to serve as an Officer on active duty.

15. Plaintiff went on to serve in four separate combat deployments, first in Afghanistan (2002, 2005-2006), and then in Iraq (2004, 2006-2007).

16. Plaintiff was promoted early to the rank of Major in 2003, to the rank of Lieutenant Colonel on July 1, 2009, and to the rank of Colonel on September 1, 2014.

17. During the course of her career, Plaintiff sustained combat related injuries, including a traumatic brain injury (TBI), of which the Defendant was aware.

18. In May of 2016 Plaintiff was assigned to STRATCOM, as the Director of the Commander's Action Group ("CAG") under Admiral Cecil Hanley.

19. Plaintiff was chosen for this role based on her record of exemplary leadership, education, and accomplishment.

20. On or about November 3, 2016, Defendant became the STRATCOM Commander and kept Plaintiff on as his CAG Director, per the recommendation of Admiral Hanley.

21. Notwithstanding assignment to STRATCOM, the Plaintiff was a member with the United States Army.

22. Notwithstanding assignment to STRATCOM, the Defendant was a member of the United States Air Force.

23. Although the Defendant maintained the rank of General Officer, which is superior to the rank of Colonel, he was not Plaintiff's supervisor for disciplinary purposes.

24. STRATCOM's stated mission is to deter strategic attack and employ forces, as directed, to guarantee the security of our nation and our allies.

25. STRATCOM is a combatant command, meaning that it operates at the strategic level.

26. The strategic level is also sometimes called the "Policy Level." The primary actors at this level are Congress, the Executive Branch led by civilians, ambassadors, and ultimately the National Command Authority (POTUS).

27. At this level, the military is directly subordinate to civilian oversight and interfaces with civilian agencies, interagency organizations, and the international community.

28. For example, STRATCOM Headquarters in Offutt is a primarily civilian, general schedule (GS) run organization.

29. Upon information and belief, military service members comprise approximately 30 percent of the workforce at STRATCOM Headquarters.

***The Reagan National Defense Forum, Simi Valley, California***

30. In 2017, STRATCOM, was invited to attend the Reagan National Defense Forum (Hereinafter "RNDF" or "Event"), which was held in Simi Valley, CA, from December 1-2, 2017.

31. The RNDF is hosted and run by the Reagan Presidential Library, a civilian organization.

32. The RNDF is a bipartisan annual event held at the Ronald Reagan Presidential Library in Simi Valley, California, where key stakeholders come together to address issues pertaining to national defense and peacetime efforts.

33. The military had no input into who was invited to attend – it was a "by invitation only" guest list.

34. The event is financed and paid for by sponsors who are primarily industries in the private sector.

35. Representative sponsors of the event included, but were not limited to: Boeing, General Electric, General Dynamics, Global Foundries, Deloitte, Lockheed Martin, Northrop Grumman, and Rolls-Royce.

36. Plaintiff attended the RNDF in Simi Valley, California from December 1-2, 2017.

37. Upon information and belief, those present for the conference included current and former senior civilian government officials, and business and media leaders, with comparatively low percentage of military officials in attendance.

38. Non-military attendees on the invite list included: Mark Aslett, President and CEO of Mercury Systems, Bret Baier, Chief Political Anchor of Fox News, Congressman Jim Banks, Julian Barnes, a reporter with the Wall Street Journal, Honorable Marion C. Blakey, the CEO of Rolls-Royce North America, Congressman Anthony Brown, Congressman Bradley Byrne, Congressman Ken Calvert, Congressman John Carter, Congresswoman Liz Cheney, Senator Joni Ernst, Congressman Trent Franks, Congressman Mike Gallagher, Tom Gentile of Spirit AeroSystems, R.D. Geveden of BWX Technologies, Congresswoman Kay Granger, Congressman Tom Graves, musical artist Lee Greenwood, Jennifer Griffin from Fox News, Steven J. Isakowitz of The Aerospace Corporation, Ambassador Kristi Kauppi, Congressman Steve Knight, Ambassador Rollandas Krišciuanas, Ambassador Lauri Lepik, Ambassador Lars Gert Los, David Martin of CBS News, Congressman Kevin McCarthy, Howard McKeon of the McKeon Group, Mike McNamara of Flex, David Melcher of the Aerospace Industries Association, Senator Jerry Moran, Congresswoman Stephanie Murphy, Phebe

Novakovic of General Dynamics, Senator Jack Reed, Trish Regan of Fox Business Network, Congressman Mike Rogers, Josh Rogin of The Washington Post, Frederick J. Ryan., Jr. of The Washington Post, Gary Sinise, Barbara Starr of CNN, Congressman Mac Thornberry, Chris Wallace of Fox News Sunday, Congressman Brad Wenstrup, Congressman Joe Wilson, former California Governor Pete Wilson, and Congressman Steve Womack.

39. Security at the event was maintained by private security personnel, contracted by or directly employed, by the Reagan National Library.

40. In the event of emergency, conference attendees were to contact the security personnel or dial 911 to summon local law enforcement in Simi Valley, CA.

41. Conference attendees were not segregated on the basis of their military status.

42. During the event, Plaintiff mingled and had discussions with civilian attendees, and attended a guided tour of the Reagan Presidential Library.

43. Plaintiff's agenda for the Simi Valley trip was as follows:

| SIMI VALLEY, CA Reagan Forum DEC 2, 2017: | |
|---|---|
| 0600-0700 | PT/Executive Time |
| 0700-0720 | Transit to Reagan National Library (auto) |
| 0730-0845 | PANEL 1 Breakfast-- A View of Defense from Allies & Friends |
| 0900-1015 | PANEL 2 -- Space Wars: Are We Prepared for the Next Domain of Warfare? |
| 1015-1130 | Executive Time |
| 1215-1330 | Keynote Luncheon w/ NSA McMaster |

FIRST AMENDED COMPLAINT

| | |
|---|---|
| 1345-1500 | PANEL 6 -- Assessing the Rebuild: Will we have the Strategy and Resources to Rebuild the Military in FY19 Pentagon |
| 1500-1700 | Private and Docent (civilian) Guided tour of the Reagan Library ** Add-on event, not reflected in schedule. |
| 1700-1745 | CLOSING SESSION w/ DSD Shanahan |
| 1800-1900 | Peace through Strength Reception |
| 1900-2030 | Peace through Strength Award Dinner (event went longer pushing the transit time to a bit later. |
| 2040-2100 | Transit to lodging |
| 2100 | Executive Time |
| **2145-2245** | **Sexual Assault occurs** |

44. During the conference, Plaintiff moved around freely to interact and network with civilian attendees.

45. Plaintiff sat through receptions, panels, a luncheon hosted by Fox News host, Bret Baier, an awards ceremony, and a meeting with one United States Senator.

46. After the conference was over, Plaintiff returned to her hotel room at the Hyatt Regency Westlake.

***The Hyatt Regency Westlake Village***

47. While attending the event, Plaintiff stayed at the Hyatt Regency Westlake Hotel, at 880 S. Westlake Blvd, Westlake Village, California.

48. The Hyatt Regency is a company owned by Hyatt Hotels Corporation.

49. Hyatt Hotels Corporation owns and operates hotels and franchisees located throughout the State of California.

50. A true and accurate picture of the Hyatt Regency Westlake is annexed hereto as **Exhibit "A."**

51. Upon information and belief, the majority of guests who stayed at the Hyatt Regency Westlake from December 1, 2017 - December 2, 2017 were civilians, including civilian attendees of the RNDF, couples, and families.

52. During Plaintiff's stay, the hotel was equally open to members of the military and non-military guests, including equal access to entrances, hallways, elevators, private rooms, and facilities.

53. Defendant's hotel room was directly across the hall to the Plaintiff's room.

54. The military neither managed nor dictated the day-to-day operations of the hotel.

55. Similarly, the military was not responsible for policing the hotel or responding to emergencies during Plaintiff's stay.

56. For example, in the event of an emergency, such as fire or a criminal act, both civilian and military guests, as well as hotel employees were to contact local authorities in Westlake Village or dial 911, not a military response team or any other military personnel.

57. There was nothing unique about the room Plaintiff stayed in as it relates to her status as a service member.

58. Access to both Plaintiff's room and the hallway leading to her room was unrestricted, and her room could be accessed just as easily as the rooms of any other civilian guest staying at the hotel during the same time-period.

59. For example, housekeeping had access to Plaintiff's room and did in fact tidy her room and refresh towels during her stay just as it did for every other

8    Case No. 2:19-cv-10076-MWF-AGRx
FIRST AMENDED COMPLAINT

civilian guest's room.

60. Housekeeping also had access to Defendant's room.

61. Upon information and belief, Plaintiff's room was identical or nearly identical, to every other civilian's room staying at the hotel during the same time-period.

62. On or about December 2, 2017, late in the evening and after the conference had concluded, Defendant knocked on Plaintiff's hotel room door.

63. At the time Defendant approached Plaintiff's hotel room, she was retiring for the evening, applying face cream and readying herself for bed.

64. She was not expecting any visitors.

65. Upon opening the door, Defendant entered Plaintiff's private hotel room, wearing workout clothes, not a military uniform.

66. Defendant did not "Order" the Plaintiff to open the door.

67. Nor did Defendant "Order" the Plaintiff to grant him access to her room.

68. Plaintiff could have declined Defendant's entry into her hotel room had she elected to do so.

69. Upon entering Plaintiff's room Defendant did not discuss or address a single matter remotely military in nature.

70. Instead, Defendant grabbed Plaintiff so closely and tightly she was unable to move. He began to kiss her on the lips and grabbed her buttocks.

71. Defendant is approximately 6 foot 4 in stature.

72. He is a man of considerable strength in comparison to Plaintiff, who is 5 foot 7.

73. While restraining Plaintiff, Defendant uttered something to the effect of, "I want to make love to you" or words to this effect.

74. Plaintiff stated "that is not going to happen" or words to that effect.

75. However, Defendant restrained Plaintiff, grabbed her buttocks, kissed

her against her will and rubbed his penis against her until he ejaculated.

76. Defendant's conduct was a substantial deviation from Defendant's duties and was carried out for his own personal gratification.

77. Sexual activity does not fall within the scope of employment of any individual employed by the United States Air Force.

78. Nonconsensual sexual acts toward the plaintiff do not fall within the scope of any employment with the United States Air Force.

79. Defendant's conduct was outside the scope of his employment with the United States Air Force.

80. Sexual activity does not implicate military decision making.

81. Sexual activity does not implicate military judgment.

82. Nonconsensual sexual activity toward the Plaintiff does not implicate military judgment.

83. Nonconsensual sexual activity toward the Plaintiff does not implicate military decision making.

84. Nonconsensual sexual activity toward the Plaintiff is not an activity incident to military service.

85. Defendant's conduct toward the Plaintiff not an activity performed incident to his military service.

86. Defendant was not subjected to military discipline for the nonconsensual acts taken against the Plaintiff.

87. As a direct and proximate result of Defendant's intentional and reckless conduct, Plaintiff has sustained and will continue to sustain injury, including severe emotional distress, physical and mental health problems, and legal expenses, all of which have caused permanent injury in an amount to be determined at trial.

88. None of the injuries sustained by Plaintiff's occurred in an activity incident to her military service.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION

### (Sexual Battery, California Civil Code § 1708.5)

89. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

90. Defendant subjected Plaintiff to unwanted physical contact that was harmful and sexually offensive.

91. Defendant subjected Plaintiff to unwanted physical contact when he physically restrained Plaintiff, kissed her, grabbed her buttocks, and rubbed his genitals against her until he ejaculated.

92. Defendant intended to cause the harmful and sexually offensive physical contact with Plaintiff.

93. Defendant's conduct was offensive to a reasonable sense of personal dignity and did so offend Plaintiff's sense of personal dignity.

94. Plaintiff did not consent to any of the acts of physical contact and informed Defendant that his actions were unwanted.

95. Defendant's actions were carried out for the sole purpose of his own arousal and sexual gratification.

96. By taking these actions, Defendant committed a sexual battery as that term is defined by California Civil Code § 1708.5.

97. Defendant took these actions for the purpose of sexual arousal, sexual gratification, and/or sexual abuse.

98. In taking these actions, Defendant also committed a sexual act as defined by California Code of Civil Procedure §340.16(b)(1) and California Penal Code §243.4(d).

99. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's rights.

100. As a direct and proximate result of Defendant's conduct, Plaintiff has

sustained and will continue to sustain economic injury, in the form of severe emotional distress, physical and mental anguish, all of which caused permanent injury in an amount that shall be determined at trial.

101. Plaintiff is entitled to punitive damages because Defendant acted with malice, oppression, and a willful and conscious disregard of the rights or safety of others when sexually battering Plaintiff.

## SECOND CAUSE OF ACTION
### (Assault)

102. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 101 above with the same force and effect as if set forth fully herein.

103. Defendant intended to cause harmful and offensive contact with Plaintiff when he subjected her to unwanted sexual acts, including, without limitation, grabbing her buttocks, kissing her, restraining her and rubbing his penis against her body until he ejaculated.

104. Defendant physically restrained Plaintiff in her hotel room and told her that he wanted "to make love to her" thereby leading Plaintiff to reasonably believe she would be touched in a harmful or sexually offensive way, causing her imminent apprehension of such harmful or offensive contact.

105. Defendant's actions were unwanted and unwelcome.

106. Defendant's actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's rights and personal dignity.

107. As a direct and proximate result of Defendant's conduct, Plaintiff sustained and will continue to sustain economic injury in the form of severe emotional distress, physical and mental anguish, all of which caused permanent injury in an amount that shall be determined at trial.

108. Plaintiff is entitled to punitive damages because Defendant acted with malice, oppression, and a willful and conscious disregard of the rights or safety of others when assaulting Plaintiff.

## THIRD CAUSE OF ACTION

### (Gender Violence, California Civil Code § 52.4)

109. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 108 above as though the same were set forth in full herein.

110. Defendant's physical restraint of Plaintiff and use of force when grabbing Plaintiff's buttocks, kissing her, restraining her, and grinding against her until ejaculating constitutes a criminal offense of sexual battery as defined by California Penal Code § 243.4(d).

111. Defendant's actions were motivated in whole or in part on the basis of Plaintiff's gender, and therefore constitutes Gender Violence, as the term is defined by California Civil Code § 52.4.

112. As a direct and proximate result of Defendant's conduct, Plaintiff sustained and will continue to sustain damages in form of severe emotional distress, physical and mental anguish, all of which caused permanent injury in an amount that shall be determined at trial.

113. Plaintiff is entitled to punitive damages because Defendant acted with malice, oppression, and a willful and conscious disregard of the rights or safety of others when subjecting Plaintiff to gender violence.

## FOURTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

114. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 113 above as though set forth with the same force and effect as if fully set forth herein.

115. Defendant's physical restraint of Plaintiff and use of force when grabbing Plaintiff's buttocks, kissing her, restraining her, and grinding against her until ejaculating is both extreme and outrageous conduct.

116. This conduct was beyond all bounds usually tolerated in a civilized society.

117. The extreme and outrageous nature of the conduct is compounded by Defendant's awareness that his conduct was unwanted and that the Plaintiff had previously suffered a combat injury resulting in a traumatic brain injury.

118. Defendant was told, unequivocally, that his advances were unwanted and he therefore knew, or should have known, that his sexual acts would cause severe and extreme emotional distress.

119. Defendant's actions were undertaken with the intention of causing Plaintiff emotional distress, and/or with reckless disregard for the probability that he would cause her emotional distress.

120. These actions constituted sexual assault as defined by California Code of Civil Procedure § 340.16(b)(1).

121. As a result of these actions, Plaintiff suffered severe and extreme emotional distress.

122. By taking the extreme and outrageous actions described herein with the intention of, or reckless disregard for, causing extreme and severe emotional distress, Defendant subjected Plaintiff to intentional infliction of emotional distress.

123. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of severe emotional distress, physical and mental anguish, all of which caused permanent injury in an amount to be determined at trial.

124. Plaintiff is entitled to punitive damages because Defendant's extreme and outrageous conduct was committed with malice, oppression, and a willful and conscious disregard of the rights or safety of others and the likelihood of causing emotional distress.

///
///
///

## FIFTH CAUSE OF ACTION
### (Battery)

125. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 124 above with the same force and effect as if fully set forth herein.

126. Defendant's physical restraint of Plaintiff and use of force when grabbing Plaintiff's buttocks, kissing her, restraining her, and grinding against her until ejaculating constitutes a battery.

127. Defendant intended to cause the physical contacts with Plaintiff described herein.

128. Defendant intended these physical contacts to harm and/or offend Plaintiff and/or acted with a willful disregard for Plaintiff's rights.

129. A reasonable person in Plaintiff's position would have been offended by the physical contacts described herein.

130. Plaintiff did not consent to any of these physical contacts.

131. Plaintiff was injured, damaged, offended and/or harmed by these unwanted physical contacts.

132. Defendant, by intentionally carrying out the unwanted and nonconsensual physical contacts with intent to harm or offend Plaintiff and/or with willful disregard for Plaintiff's rights, caused Plaintiff injury, offense, damage, and/or harm, thereby committing the offense of battery against Plaintiff.

133. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of severe emotional distress, physical and mental anguish, all of which caused permanent injury in an amount to be determined at trial.

134. Plaintiff is entitled to punitive damages because Defendant's extreme and outrageous conduct was committed with malice, oppression, and a willful and conscious disregard of the rights or safety of others when battering the Plaintiff.

## SIXTH CAUSE OF ACTION

### (Ralph Act, California Civil Code § 51.7)

135. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 134 with the same force and effect as if fully set forth herein.

136. Defendant's physical restraint of Plaintiff and use of force when grabbing Plaintiff's buttocks, kissing her, restraining her, and grinding against her constituted an act of violence and/or threat of a violent act against Plaintiff.

137. Defendant took the above-complained of actions because of or on account of Plaintiff's gender (female).

138. Plaintiff was harmed by Defendant's acts of violence and threats of violence described herein.

139. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

140. By taking the above described actions, and consequently causing Plaintiff's resulting harm, Defendant violated the Ralph Act (California Civil Code § 51.7).

141. As a result of his violations of California Civil Code § 51.7, Defendant is liable to Plaintiff for her actual damages, exemplary damages, a civil penalty of Twenty-Five-Thousand dollars ($25,000.00), and attorney's fees.

## SEVENTH CAUSE OF ACTION

### (Tom Banes Civil Rights Act, California Civil Code § 52.1)

142. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 141 above with the same force and effect as if fully set forth herein.

143. Defendant's physical restraint of Plaintiff and use of force when grabbing Plaintiff's buttocks, kissing her, restraining her, and grinding against her until ejaculating each constituted an act of intimidation, coercion, threat of violence, and violent action against Plaintiff.

144. These acts of intimidation, coercion, threats of violence, and violent

actions against Plaintiff interfered with Plaintiff's rights under the laws of the State of California, including, without limitation, her right to be free from battery, assault, sexual battery (as defined by California Civil Code § 1708.5), gender violence (as defined by California Civil Code § 52.4), and violations of the Ralph Act.

145.   Plaintiff was harmed by Defendant's acts of intimidation, coercion, threats of violence, and violence described herein.

146.   Defendant's conduct was a substantial factor in causing Plaintiff harm.

147.   By taking the above described actions, and causing Plaintiff harm, Defendant violated the Tom Banes Act (California Civil Code § 52.1).

148.   As a result of his violations of California Civil Code § 52.1, Defendant is liable to Plaintiff for up to three times the amount of her actual damages (but not less than Four-Thousand dollars ($4,000)), exemplary damages, a civil penalty of Twenty-Five Thousand dollars ($25,000), and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   Award compensatory damages in an amount to be proven at trial, but in excess of $75,000;

B.   Direct Defendant to pay Plaintiff a civil penalty of Twenty-Five Thousand dollars ($25,000);

C.   Direct Defendant to pay Plaintiff exemplary and punitive damages sufficient to punish Defendant for his unlawful conduct;

D.   Award Plaintiff reasonable attorney's fees, expert fees, and all other costs and disbursements associated with this action; and,

E.   Grant such other relief the Court deems just and equitable.

///
///

# JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Dated: July 30, 2020      Respectfully Submitted,

SOLOMON LAW FIRM, PLLC

By: _____
Ariel E. Solomon *(PHV)*
Kathryn Barcroft *(PHV)*

Majed Dakak
Trevor V. Stockinger
KESSELMAN BRANTLY STOCKINGER LLP

*Attorneys for Plaintiff*
KATHRYN SPLETSTOSER

# ATTESTATION

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that Ariel E. Solomon, on whose behalf this filing is jointly submitted, has concurred in this filing's content and has authorized me to file this document.

By: */s/ Trevor V. Stockinger*
Trevor V. Stockinger

# EXHIBIT A

