ETHAN P. DAVIS
Acting Assistant Attorney General
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
REGINALD M. SKINNER
Senior Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-3111
Fax: (202) 616-4314
Email: reginald.m.skinner@usdoj.gov

Counsel for the United States of America

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN SPLETSTOSER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GENERAL JOHN E. HYTEN, in his individual capacity,<br><br>　　　　　Defendant. | Case No. 2:19-cv-10076-MWF-AGR<br><br>**(1) NOTICE OF MOTION AND MOTION OF THE UNITED STATES TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 12(b)(1)]**<br><br>Date: October 5, 2020<br>Time: 10:00 a.m.<br>Ctrm: Hon. Michael W. Fitzgerald<br>United States District Judge |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION ........................................................................................... 1

STATEMENT ................................................................................................. 2

ARGUMENT ................................................................................................. 5

I.  Colonel Spletstoser Cannot Avoid Application of the *Feres* Doctrine by
Simply Deleting from Her Amended Complaint the Allegations that Show
Her Alleged Injuries Arose Out of Activity Incident to Her Military Service ....... 5

    A.  The Court may consider Colonel Spletstoser's previously-pled
allegations in ruling on the United States' motion to dismiss. ................... 5

    B.  Colonel Spletstoser's claims are still *Feres*-barred because she has
not overcome the admissions in her original complaint. ........................... 10

        1.  Relevant caselaw ................................................................. 10

        2.  Application of the *Feres* doctrine ....................................... 15

    C.  Even apart from Colonel Spletstoser's strategically omitted
allegations, the amended complaint still does nothing to alter the
Court's conclusion that this lawsuit falls within the broad reach of the
*Feres* doctrine. ......................................................................................... 20

II.  The FTCA's "Intentional Tort" Exception also Bars any Finding of
Liability against the United States. .......................................................... 21

CONCLUSION .............................................................................................. 22

# TABLE OF AUTHORITIES

**Federal Cases**

*Adams v. United of Omaha Life Ins. Co.*,
No. 8:12-cv-00969-JST-JPR, 2013 WL 12113225, (C.D. Cal. Jan. 10, 2013) .......... 8, 9

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) .........................................................................7

*Andrews v. Metro N. Commuter R. Co.*,
882 F.2d 705 (2d Cir. 1989)..........................................................................7

*Becker v. Pena*,
No. 95-36172, 1997 WL 90570 (9th Cir. Feb. 28, 1997) ................................11, 13, 14

*Bon v. United States*,
802 F.2d 1092 (9th Cir. 1986) .......................................................................16

*Burgoon v. Narconon of N. California*,
125 F. Supp. 3d 974 (N.D. Cal. 2015) ............................................................7

*CarMax Auto Superstores California LLC v. Hernandez*,
94 F. Supp. 3d 1078 (C.D. Cal. 2015) ...........................................................10

*Cioca v. Rumsfeld*,
720 F.3d 505 (4th Cir. 2013) ........................................................................11

*Cole v. Sunnyvale*,
No. C-08-05017 RMW, 2010 WL 532428 (N.D. Cal. Feb. 9, 2010)...........................9

*Colon v. United States*,
No. 96-50233, 1997 WL 255641 (5th Cir. May 7, 1997)...............................11

*Corey v. United States*,
No. 96-6409, 1997 WL 474521 (10th Cir. Aug. 20, 1997) ..............................11, 14, 20

*Costo v. United States*,
248 F.3d 863 (9th Cir. 2001) ...................................................................10, 16

*Dexheimer v. United States*,
608 F.2d 765 (9th Cir. 1979) .......................................................................13

iii

*Doe v. Hagenbeck*,
    870 F.3d 36 (2d Cir. 2017)..................................................................11

*Estate of McAllister v. United States*,
    942 F.2d 1473 (9th Cir. 1991) .......................................................2, 3

*Garmon v. Cty. of Los Angeles*,
    828 F.3d 837 (9th Cir. 2016) ...............................................................6

*Gonzalez v. U.S. Air Force*,
    88 F. App'x 371 (10th Cir. 2004) ....................................................11

*Huey v. Honeywell, Inc.*,
    82 F.3d 327 (9th Cir. 1996) .................................................................7

*In re Enron Corp.*,
    370 B.R. 583 (Bankr. S.D.N.Y. 2007)...............................................8

*In re YogaWorks, Inc. Sec. Litig.*,
    No. 2:18-cv-10696-CJC-SK, 2020 WL 2549290 (C.D. Cal. Apr. 23, 2020)................7

*J. Edwards Jewelry Distrib., LLC. v. Wells Fargo & Co.*,
    No. 18-CV-03886-YGR, 2019 WL 2329248 (N.D. Cal. May 31, 2019)......................8

*Jackson v. Loews Hotels, Inc.*,
    No. 5:18-cv-00827-DMG-JC, 2019 WL 6721637 (C.D. Cal. July 24, 2019).......passim

*Klay v. Panetta*,
    758 F.3d 369 (D.C. Cir. 2014) ..........................................................11

*Lutz v. Sec'y of Air Force*,
    944 F.2d 1477 (9th Cir. 1991) .....................................................13, 17

*Mackey v. United States*,
    226 F.3d 773 (6th Cir. 2000) ...................................................11, 14, 15

*Olsen v. U.S. ex rel. Dep't of the Army*,
    144 F. App'x 727 (10th Cir. 2005) ...................................................21

*Orgone Capital III, LLC v. Daubenspeck*,
    912 F.3d 1039 (7th Cir. 2019) .........................................................1, 5

iv

*Osborn v. Haley*,

   549 U.S. 225 (2007)...........................................................................21

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,

   514 F.3d 856 (9th Cir. 2007) ...........................................................6

*Perez v. Puerto Rico Nat. Guard*,

   951 F. Supp. 2d 279 (D.P.R. 2013)..............................11, 15, 16, 21

*Reddy v. Litton Indus., Inc.*,

   912 F.2d 291 (9th Cir. 1990) ...........................................................6

*Safe Air for Everyone v. Meyer*,

   373 F.3d 1035 (9th Cir. 2004) .......................................................10

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*,

   343 F.3d 1036 (9th Cir. 2003) .........................................................9

*Schneider v. Kissinger*,

   412 F.3d 190 (D.C. Cir. 2005) ..................................................1, 22

*Shirley v. Univ. of Idaho, Coll. of Law*,

   800 F.3d 1193 (9th Cir. 2015) .........................................................6

*Shiver v. United States*,

   34 F. Supp. 2d 321 (D. Md. 1999) .................................................11

*Smith v. United States*,

   196 F.3d 774 (7th Cir. 1999) .........................................................11

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,

   782 F.Supp.2d 1059 (E.D. Cal. 2011) .............................................8

*Stauber [v. Cline*,

   837 F.2d 395 (9th Cir. 1988) ..................................................passim

*Stubbs v. United States*,

   744 F.2d 58 (8th Cir. 1984) ....................................................11, 15

*United States v. Shearer*,

   473 U.S. 52 (1985).................................................................12, 14, 21

*United States v. Stanley,*

    483 U.S. 669 (1987)............................................................................20

*Washington v. United States,*

    No. 92-56330, 1993 WL 471790 (9th Cir. June 11, 1993)..........................18

**State Cases**

*Zaccaro v. Parker,*

    645 N.Y.S.2d 985 (Sup. Ct. 1996).........................................................11

**Federal Statutes**

28 U.S.C. § 2679(d).............................................................................21

28 U.S.C. § 2680(h).............................................................................21

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on October 5, 2020, at 10:00 a.m., or as soon thereafter as the parties may be heard, defendant United States of America[1] will bring for hearing a motion to dismiss the First Amended Complaint. The hearing will take place before the Honorable Michael W. Fitzgerald, in his Courtroom, First Street Courthouse, 350 West First Street, Courtroom 5A, Los Angeles, California 90012.

The United States respectfully moves to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. This Motion is based on this Notice, the Memorandum of Points and Authorities, the pleadings, records, and files in this action, and upon such other and further arguments, documents, and grounds as may be presented at the hearing of this Motion. This Motion is made following the Local Rule 7-3 conference of counsel. Undersigned counsel emailed plaintiff's counsel on August 17, 2020, explaining in detail the substance of the Motion. The parties were unable to reach agreement on the Motion.

Dated: August 24, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch

/s/ *Reginald M. Skinner*
Senior Trial Attorney
Virginia State Bar. No. 48785
Torts Branch, Civil Division
United States Department of Justice

Counsel for the United States of America

---

[1] This Motion is made by the United States, which was substituted for General Hyten under 28 U.S.C. 2679(d)(1). *See* ECF No. 38.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This Court carefully examined the law and the facts alleged by Colonel Spletstoser when it dismissed her Complaint against General Hyten, finding "that the allegations in this action are most analogous to those in *Stauber* [*v. Cline*, 837 F.2d 395 (9th Cir. 1988)], and that Plaintiff's claims fall within the *Feres* doctrine." ECF No. 38, at 3. Apparently unable to cure the deficiencies exposed in her original complaint, Colonel Spletstoser now attempts to sweep them under the rug simply by omitting from her amended complaint the allegations that show a direct connection between her injuries and activity incident to her military service. Colonel Spletstoser cannot avoid dismissal in this manner. Courts have repeatedly rejected this "strange maneuver" of deleting information that shows the plaintiff's claims are barred. *Schneider v. Kissinger*, 412 F.3d 190, 199 (D.C. Cir. 2005).

Specifically, this Court and others have explained that factual assertions in a pleading are judicial admissions, and when an amended complaint simply omits, without explanation, allegations that otherwise defeat the plaintiff's case, the "amended pleading does not operate as a judicial *tabula rasa*." *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019). The court is not required to ignore its prior decision or damaging statements in a pleading that have not been contradicted or explained. *Id.* Rather, the court may consider the previously-pled allegations in ruling on a motion to dismiss the amended complaint. *See, e.g.*, *Jackson v. Loews Hotels, Inc.*, No. 5:18-cv-00827-DMG-JC, 2019 WL 6721637 (C.D. Cal. July 24, 2019).

The admissions Colonel Spletstoser made in her initial pleading have not been contradicted. Instead, she amended her complaint to simply drop the abundant details showing that her alleged injury arose incident to her military service as the Director of General Hyten's Commander's Action Group (CAG). Nor have the admissions been explained sufficiently to revive her case. All that Colonel Spletstoser has said is that the

1

allegations were "background information." ECF No. 28, at 7 n.4.[2] But the information they provide (and the reason Colonel Spletstoser dropped them) shows the direct connection between her injuries and her military service. That is not an explanation that saves Colonel Spletstoser's claims; it is one that shows the Court was correct to dismiss them in the first instance. And it shows that her claims fail yet again for the same reasons the Court previously identified.

Moreover, even apart from Colonel Spletstoser's strategically omitted allegations, the amended complaint does nothing to alter the Court's determination that this lawsuit falls within the "enormous breadth" of the *Feres* doctrine. *Estate of McAllister v. United States*, 942 F.2d 1473, 1480 (9th Cir. 1991). The amended complaint still alleges injuries that occurred while Colonel Spletstoser was attending a national *defense* forum in her military capacity as General Hyten's CAG Director. And it is still the case that Colonel Spletstoser's lawsuit threatens military discipline by inviting this Court to second-guess the military's decisions regarding the investigation and disposition of sexual misconduct claims. This concern is reinforced by Colonel Spletstoser's Freedom of Information Act (FOIA) suit in Washington, D.C., where she asserts a "compelling and immediate need" for extensive discovery into the military's handling of her allegations against General Hyten because this evidence is supposedly "essential" to pursue her damages claims here. *Spletstoser v. U.S. Dep't of Defense*, No. 1:20-cv-731-CKK (D.D.C.), ECF No. 1, ¶¶ 96-97, 110-11. At bottom, this Court was right to dismiss Colonel Spletstoser's original complaint as *Feres*-barred, and nothing has changed. The First Amended Complaint cannot revive Colonel Spletstoser's case. And therefore, its dismissal is proper.

## STATEMENT

Colonel Spletstoser's original complaint alleged the following basic claim: she

---

[2] *See also id.* at 2 n.1 ("Any information provided in the Complaint related to facts other than the sexual misconduct including the assaults and batteries listed in the causes of action is for background purposes only and will be withdrawn with an amended complaint, should the Court grant leave to amend.").

was repeatedly harassed and sexually assaulted by General Hyten—her first-line supervisor and commanding officer—on multiple occasions for a full year. ECF No. 1 ("Compl."), ¶¶ 33-47. These alleged incidents occurred both on-base and off-base, both during and after working hours—some occurring when she was working in her STRATCOM[3] office, while others took place when she was on official temporary duty (TDY) assignments in her military capacity as General Hyten's CAG Director. *Id.* When she refused General Hyten's alleged unwanted gestures, he retaliated against her, giving her negative performance evaluations and targeting her for investigation, which resulted in Colonel Spletstoser being relieved of her duties (at General Hyten's request) and forced to retire from the military. *Id.* ¶¶ 48-79. The Air Force Office of Special Investigations (AFOSI) allegedly mishandled the investigation of her sexual misconduct claims, and senior military leaders improperly refused to take disciplinary action against General Hyten. *Id.* ¶¶ 80-124.

Based on these allegations, General Hyten and the United States moved to dismiss the complaint for lack of jurisdiction on *Feres* grounds. ECF No. 22. And this Court granted the motion, concluding "that the allegations in this action are most analogous to those in *Stauber*, and that Plaintiff's claims fall within the *Feres* doctrine." ECF No. 38, at 3.

In response, Colonel Spletstoser filed an amended complaint that does not allege any new or different facts. Instead, as forecast in her opposition to the initial motion to dismiss,[4] she has simply deleted from her amended complaint all of the allegations this Court relied upon in determining that jurisdiction was lacking—*i.e.*, that Colonel Spletstoser's alleged injuries arose from activity incident to her military service. Specifically, gone are the allegations that:

- General Hyten was Colonel Spletstoser's "first-line supervisor," Compl. ¶ 2;

- General Hyten allegedly sexually harassed and assaulted Colonel Spletstoser

---

[3] United States Strategic Command.

[4] *See* ECF No. 28, at 2 n. 1; *id.* at 7 n.4.

3

"repeatedly" on "multiple occasions" "for several months" from January 2017 to December 2017, *id.* ¶¶ 1, 34, 37, 51;

- Colonel Spletstoser was allegedly subjected to this behavior on at least nine separate occasions, in multiple locations, including five alleged incidents that occurred when she was working in her STRATCOM office in Nebraska, *id.* ¶¶ 41-43 (alleging two incidents at STRATCOM and claiming similar incidents occurred "approximately an additional three times");

- The alleged incidents occurred while she was on "temporary duty" assignments, *id.* ¶ 35;

- Incidents allegedly occurred after working hours that nevertheless had a connection to the performance of Colonel Spletstoser's military duties—for example, allegations that General Hyten came to her hotel room "under the pretense of work-related purposes," *id.* ¶ 45; *accord id.* ¶ 35 ("to discuss the next day's talking points"); *id.* ¶ 38 ("to go over work issues"); *id.* ¶ 39 ("there was work to be done"); *id.* ¶ 40 ("for a Pacific Command trip" and "while rehearsing for his upcoming press conference"); *id.* ¶ 42 ("to discuss the day's meetings and events"); *id.* ¶ 44 ("before they left for the airport");

- "Gen. Hyten retaliated against her and the government then failed to conduct a fair investigation into Gen. Hyten's conduct," *id.* ¶ 36;

- For refusing General Hyten's "sexual advances and assaults," General Hyten allegedly caused Colonel Spletstoser to receive negative performance appraisals and targeted her for an AR 15-6 investigation, which resulted in Colonel Spletstoser receiving an official reprimand, being relieved of her duties as CAG Director, and being forced to retire from the military, *id.* ¶¶ 49, 52-60, 62, 64-71, 73-77; and

- AFOSI's investigation of her sexual misconduct claims was allegedly inadequate, and the military's decision to take no disciplinary action against General Hyten was biased and conflicted, ¶¶ 84-92, 94-96, 101-08, 113-15, 117-19, 124.

Having deleted all of these allegations, Colonel Spletstoser's basic claim has been reduced to: "Plaintiff was sexually assaulted by John E. Hyten ('Defendant,), on December 2, 2017 in a hotel room in Westlake Village, CA." First Am. Compl. ¶ 1.

4

**ARGUMENT**

I.   **Colonel Spletstoser Cannot Avoid Application of the *Feres* Doctrine by Simply Deleting from Her Amended Complaint the Allegations that Show Her Alleged Injuries Arose Out of Activity Incident to Her Military Service.**

  A.   **The Court may consider Colonel Spletstoser's previously-pled allegations in ruling on the United States' motion to dismiss.**

Colonel Spletstoser cannot circumvent this Court's previous decision that her claims are *Feres*-barred by selectively omitting from her amended complaint the allegations that confirm the doctrine's application to her claims. Courts have explained that factual assertions in a pleading are judicial admissions, and when an amended complaint simply omits, without a legitimate explanation, allegations that are harmful to the plaintiff's case, the "amended pleading does not operate as a judicial *tabula rasa*." *Orgone Capital III, LLC*, 912 F.3d at 1048. The "court is not required to ignore its prior decision" or pretend that the allegations never existed. *Id.* Rather, the court may consider the earlier allegations in ruling on a motion to dismiss the amended complaint.

Particularly instructive is this Court's decision in *Jackson*, 2019 WL 6721637. The plaintiff in that case booked a hotel room with Loews. The company experienced a data breach, whereby an intruder obtained credit card and personal information for some reservations. The plaintiff brought state common law and statutory claims against Loews, alleging that the data breach placed her at an imminent risk of identity theft. The Court granted Loews' Rule 12(b)(1) motion to dismiss because the complaint failed to allege that the plaintiff suffered an Article III injury sufficient to establish standing to pursue her claims. *Id.* at *1. Specifically, the plaintiff failed to demonstrate a substantial risk of future harm because her complaint alleged that she had closed or modified her financial accounts after the hacking, thereby neutralizing any risk of future fraud arising from the theft of her financial information. *Id.* at *2. When given leave to amend her allegations, the plaintiff "simply omit[ted] from her [amended complaint] any allegations that she closed or modified her financial accounts after the data breach." *Id.*

1    This Court began its analysis by observing that the "Plaintiff's decision to remove

2  her previous allegations about closing or modifying her credit card or bank accounts

3  does not simply erase those allegations from the case." *Id.* at *3. The Court then

4  proceeded to synthesize the Ninth Circuit's case law on how courts should treat a

5  plaintiff's attempt to amend away adverse earlier allegations. While Loews argued that

6  courts need not accept allegations that contradict allegations in a previous complaint, this

7  Court explained that "[t]he reality of the case law in this circuit . . . is more

8  complicated." *Id.* The Court observed that, on the one hand, in the context of granting

9  leave to amend, the Ninth Circuit has held that "leave to amend should be liberally

10  granted, [but] the amended complaint may only allege other facts *consistent with the*

11  *challenged pleading*." *Id.* (emphasis added) (quoting *Reddy v. Litton Indus., Inc.*, 912

12  F.2d 291, 296-97 (9th Cir. 1990)).[5] On the other hand, the Ninth Circuit "later held,

13  without overturning *Reddy*, that 'there is nothing in the Federal Rules of Civil Procedure

14  to prevent a party from filing successive pleadings that make inconsistent or even

15  contradictory allegations.'" *Id.* (quoting *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d

16  856, 860 (9th Cir. 2007)). This Court explained that not only has the Ninth Circuit "not

17  resolved this apparent inconsistency," but there are some indications "that *Reddy* and

18  *PAE* may be irreconcilable." *Id.* (citing *Shirley v. Univ. of Idaho, Coll. of Law*, 800 F.3d

19  1193, 1195 (9th Cir. 2015) ("In my view, *PAE* … is irreconcilable with *Reddy* and its

20  rationale.") (Canby, J., concurring)).

21    Ultimately, this Court concluded in *Jackson* that the plaintiff's attempt to avoid

22  dismissal simply by omitting the allegations that defeated her case made it unnecessary

23  to reconcile the Ninth Circuit's conflicting decisions:

24      The Court can ultimately avoid the intra-circuit confusion on this issue
        … because the [Second Amended Complaint's] allegations do not
25      *contradict* the [First Amended Complaint's] allegations—the SAC
        merely *omits* previously-pled material information that harms
26

27  ―――――――――――――

28  [5] The Ninth Circuit has cited *Reddy* for this proposition as recently as *Garmon v. Cty. of Los Angeles*,
    828 F.3d 837, 846 (9th Cir. 2016).

Plaintiff's case. ***These allegations are therefore more appropriately characterized as judicial admissions that Plaintiff has not cured***. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (assertions in pleadings are judicial admissions unless amended); *see also Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) (admissions in original complaints that have been "amended or withdrawn" are no longer conclusive, but are still admissions, and courts may still consider them); *Burgoon v. Narconon of N. California*, 125 F. Supp. 3d 974, 984 (N.D. Cal. 2015) ("The amendment of a pleading does not make it any the less an admission of the party") (citing *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989)).

*Id.* (second emphasis added).

The plaintiff in *Jackson* thus failed to "overcome her prior admission that she closed or modified her accounts to mitigate the impact of the data breach," and she consequently failed to cure the deficiencies exposed in her prior complaint regarding her lack of standing to sue for information exposed by the data breach. *Id.* Accordingly, this Court granted the defendant's motion to dismiss the Second Amended Complaint without further leave to amend. *Id.* at *5. And in another case raising very similar allegations of fraud arising from a data breach, this Court reached the same result. *See Smith v. Sabre Corp.*, No. 2:17-cv-05149-SVW-AFM (C.D. Cal. Jan. 23, 2018) at 4 nn.1 & 2 ("[T]he Court is concerned with Benson's deletion of his previous affirmative admission about having not experienced any fraudulent charges. The allegation does not simply disappear because it does not appear in this version of the case. . . . Just like Benson, Smith cannot selectively delete allegations from a prior complaint to avoid dismissal of an amended complaint.").[6]

In two other cases, this Court rejected attempts by plaintiffs to avoid dismissal on statute of limitations grounds by omitting earlier allegations that showed their claims were time-barred. *See In re YogaWorks, Inc. Sec. Litig.*, No. 2:18-cv-10696-CJC-SK,

---

[6] The Court's decision in *Smith* is attached as Exhibit 1.

2020 WL 2549290, at *3 (C.D. Cal. Apr. 23, 2020) ("Plaintiff cannot avoid application of the statute of limitations by simply deleting from its amended complaint allegations evidencing that it discovered or should have discovered the factual basis of its securities claim more than one year before it filed the complaint.") (internal quotation marks and citation omitted); *Adams v. United of Omaha Life Ins. Co.*, No. 8:12-cv-00969-JST-JPR, 2013 WL 12113225, (C.D. Cal. Jan. 10, 2013). "[I]n an obvious attempt to circumvent the applicable statute of limitations, [the plaintiff in *Adams*] deleted his prior allegations concerning certain events that confirmed his claims for relief [were] time-barred." *Id.* at *3 (brackets and citation omitted). The Court rejected this gambit and proceeded to consider the allegations the plaintiff had deleted:

> While parties making an ostensible judicial admission may explain the error in a subsequent pleading or by amendment, here, Plaintiff provided no explanation other than that he omitted these allegations to "remove any confusion and/or doubt as to the date when he actually learned" of his claim. (Opp'n at 2.) Because Plaintiff does not contend that these allegations are false, and the documents verifying these allegations are properly before the Court, the Court may consider these allegations in ruling on Defendants' Motion.

*Id.* (brackets, internal quotation marks, and citations omitted); *accord In re Enron Corp.*, 370 B.R. 583, 597-98 (Bankr. S.D.N.Y. 2007) (a plaintiff "seeking to amend a complaint to omit an allegation that defeats its claim for relief must present a legitimate explanation for its previous inclusion, such as it having been the result of mistake or inadvertence"). At bottom, this Court's decisions in *Jackson*, *Smith*, *In re YogaWorks*, and *Adams* all stand for the rule that although an amended complaint ordinarily supersedes the original, when a plaintiff offers no legitimate explanation for omitting allegations that defeat the plaintiff's claim for relief, the court may consider those allegations in ruling on a motion to dismiss the amended complaint.[7]

---

[7] Others courts in this circuit agree with the principle. *See J. Edwards Jewelry Distrib., LLC. v. Wells Fargo & Co.*, No. 18-CV-03886-YGR, 2019 WL 2329248, at *4 (N.D. Cal. May 31, 2019) (plaintiff "cannot avoid application of the statute of limitations by simply deleting from its amended complaint

Applying the rule to this case confirms that the Court may properly consider the adverse allegations Colonel Spletstoser omitted from her amended complaint in ruling on the United States' motion to dismiss. With precision, Colonel Spletstoser targeted and removed the allegations the Court relied on to find that jurisdiction over her claims was lacking. Colonel Spletstoser's explanation that these allegations were simply "background information" is even less persuasive than the justification offered in *Adams*, where the plaintiff claimed that he omitted allegations showing that his claims were time-barred supposedly to "remove any confusion" about when his claims accrued. *Adams*, 2013 WL 12113225, at *3. What failed to work in *Adams*, *Jackson*, *Smith*, and *In re YogaWorks* should not work here. Just as in those cases, Colonel Spletstoser's transparent attempt to eliminate allegations showing a direct link between her injuries and activity incident to her military service "does not simply erase those allegations from the case." *Jackson*, 2019 WL 6721637, at *3. Colonel Spletstoser does not suggest she deleted those allegations because she now contends they are false; nor does she claim that she inadvertently included them in the original complaint. Accordingly, Colonel Spletstoser's previously-pled allegations are judicial admissions that she still has not overcome or cured. These allegations are properly considered in the context of the United States' *facial* challenge to subject matter jurisdiction. *Cf., e.g.*, *Adams*, 2013 WL 12113225, at *3 (considering plaintiff's previously-pled allegations in context of Rule 12(b)(6) motion to dismiss).

Considering the allegations pled in Colonel Spletstoser's original complaint would also be proper if the Court construed this motion as a *factual* challenge to subject matter

---

allegations evidencing" that it discovered or should have discovered "the factual basis of its [securities] claim" more than one year before it filed the complaint); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F.Supp.2d 1059, 1075 (E.D. Cal. 2011) ("The Court does not ignore the prior allegations in determining the plausibility of the current pleadings."); *Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428, *4 (N.D. Cal. Feb. 9, 2010) (noting that a court may "consider the prior allegations [from earlier complaints] as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief, as required under *Iqbal*").

jurisdiction. A factual attack "permit[s] the court to look beyond the complaint." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citations omitted). Relevant to this case, the evidence this Court may consider on a 12(b)(1) motion "include[es] documents that can be judicially noticed." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1086 (C.D. Cal. 2015). "Under Federal Rule of Evidence 201, the court may take judicial notice of matters of public record if the facts are not 'subject to a reasonable dispute." *Id.* at 1087 (internal quotation marks, brackets, and citation omitted). A party's pleadings, briefs, and other court "filings are proper subjects of judicial notice." *Id.*

Consistent with this authority, the Court may properly take judicial notice of and consider the following documents and information in resolving the United States' motion to dismiss: (1) the allegations previously-pled but now omitted from Colonel Spletstoser's amended complaint; (2) Colonel Spletstoser's sworn declaration, ECF No. 28-1, which is still in the record, has not been superseded, and repeats many of the same factual assertions that appeared in the original complaint; and (3) Colonel Spletstoser's opposition to the defendants' prior motion to dismiss, ECF No. 28, at 18, which concedes that the alleged harassment occurred "both during and outside work hours"—a key admission that closely aligns this case with the Ninth Circuit's decision in *Stauber*. As discussed more fully below, all of this information confirms that the Court was right the first time when it held that *Feres* bars Colonel Spletstoser's claims.

### B. Colonel Spletstoser's claims are still *Feres*-barred because she has not overcome the admissions in her original complaint.

#### 1. Relevant caselaw

The Ninth Circuit has explained that "comparison of fact patterns to outcomes in cases that have applied the *Feres* doctrine is the most appropriate way to resolve *Feres*

doctrine cases." *Costo v. United States*, 248 F.3d 863, 867 (9th Cir. 2001) (internal quotation marks and citation omitted). To that end, the United States has identified multiple cases in which courts have held that tort claims by service members arising out of rape, sexual assault, or other forms of harassment or abuse. These include cases where members of the military asserted tort claims directly against other service members,[8] as well as cases involving claims against the United States or high-ranking officials arising out of sexual misconduct by military personnel.[9]

The following three Ninth Circuit cases are most analogous to this case.

***Stauber v. Cline.*** As this Court previously determined, "the allegations in this action are most analogous to those in *Stauber*." ECF No. 38, at 3. In *Stauber*, the Ninth Circuit held that *Feres* barred a damages action brought by a National Guard mechanic against three co-workers who, "over a five-year period, continuously harassed him, both on- and off-base, during regular work-duty hours and after hours." 837 F.2d at 396. All

---

[8] *See Stauber v. Cline*, 837 F.2d 395, 400 (9th Cir. 1988) (*Feres* barred National Guard technician's claims alleging history of harassment and abuse by superior officers); *Mackey v. United States*, 226 F.3d 773, 777 (6th Cir. 2000) (*Feres* barred tort claims of military officer alleging sexual harassment by superior officers); *Perez v. Puerto Rico Nat. Guard*, 951 F. Supp. 2d 279, 290-91 (D.P.R. 2013) (injuries of National Guard member alleging history of rape and sexual harassment by superior officer, both in private hotels and on military base, were incident to service); *Corey v. United States*, No. 96-6409, 1997 WL 474521, at *5 (10th Cir. Aug. 20, 1997) (*Feres* barred tort claims of enlisted service member alleging sexual assault by superior officer while on TDY); *Colon v. United States*, No. 96-50233, 1997 WL 255641, at *1 (5th Cir. May 7, 1997) (*Feres* barred estate's claims brought on behalf of service member who was subjected to sexual harassment by her military superiors); *Stubbs v. United States*, 744 F.2d 58, 60-61 (8th Cir. 1984) (*Feres* barred estate's claims on behalf of soldier who was sexually assaulted by drill sergeant); *Zaccaro v. Parker*, 645 N.Y.S.2d 985, 991 (Sup. Ct. 1996) (*Feres* doctrine barred suit by State Air National Guard member against superior officer alleging sexual assault and harassment).

[9] *See Becker v. Pena*, No. 95-36172, 1997 WL 90570, at *1 (9th Cir. Feb. 28, 1997) (*Feres* barred FTCA claims alleging defendants failed to supervise military personnel who sexually harassed plaintiff); *Doe v. Hagenbeck*, 870 F.3d 36, 50 (2d Cir. 2017) (plaintiff's claims against senior military leaders alleging sexual assault by West Point cadet were incident to service); *Klay v. Panetta*, 758 F.3d 369, 375 (D.C. Cir. 2014) (claims of service members who were allegedly raped, sexually assaulted, or sexually harassed by military personnel arose from activity incident to service); *Cioca v. Rumsfeld*, 720 F.3d 505 (4th Cir. 2013) (same); *Gonzalez v. U.S. Air Force*, 88 F. App'x 371, 377 (10th Cir. 2004) (*Feres* barred negligence claims of plaintiff who was raped by fellow service member); *Smith v. United States*, 196 F.3d 774, 777 (7th Cir. 1999) (same); *Shiver v. United States*, 34 F. Supp. 2d 321, 322 (D. Md. 1999) (same).

11

three defendants were superior in rank to the plaintiff, and one was his immediate supervisor. *Id.* The defendants engaged in numerous harassing and intimidating conduct, including "the use of sirens and horns and other noisemaking devices, all directed at plaintiff; forcing plaintiff to leave his work area door open so as not to be able to shut the noise out . . .; physically pushing plaintiff; threatening to make negative reports about plaintiff to plaintiff's superiors; . . . and representing to plaintiff that eventually defendants would succeed in getting plaintiff fired from his position as a civilian technician." *Id.* at 396, n.2.

The Ninth Circuit held that the plaintiff's injuries arose from activity incident to military service and were precluded by the *Feres* doctrine. The court explained that although the "doctrine cannot be reduced to a few brightline rules, two key rationales "focus[] on the effect of suits between military personnel on military discipline and the problem of having civilian courts second-guessing military decisions." *Id.* at 399 (citing *United States v. Shearer*, 473 U.S. 52, 57-58 (1985)) (quotations omitted). The plaintiff's lawsuit directly implicated these concerns because (1) he was suing his military superiors; (2) "in their work [the parties] were always under the direct command of active-duty military officers"; and (3) "[t]heir conduct was subject to military discipline." *Id.* Thus, the Ninth Circuit concluded that the conduct "at the maintenance shop cannot give rise to actionable tort claims without impinging on military authority and calling into question matters which are exclusively the subject of military remedies." *Id.* at 399. The plaintiff's action involved "the types of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.* at 400 (quotations, brackets, italics and citation omitted).

"Although [the plaintiff] alleged that some of the harassment occurred off-base, the district court concluded that his claims arose from conduct in the workplace," which the Ninth Circuit did not find clearly erroneous. *Id.* The Ninth Circuit further held that "[t]o examine the relationship between on- and off-base events in this case, beyond

determining that the conduct involved was incident to service, would result in an impermissible intrusion upon military matters." *Id.* Three years later, the Ninth Circuit explained:

> In effect, *Stauber* holds that where it is sufficiently ambiguous whether challenged actions were "incident to military service," and the process of disentangling conduct could not incident to service from that incident to service would itself work an impermissible intrusion upon military matters, *Feres must be applied to the whole course of conduct.* However, where . . . the actions were completely separate from on-the-job activities, the rationale of *Stauber* does not apply.

*Lutz v. Sec'y of Air Force*, 944 F.2d 1477, 1487 (9th Cir. 1991) (emphasis added).

**Dexheimer v. United States.** In *Dexheimer v. United States*, 608 F.2d 765 (9th Cir. 1979), the Ninth Circuit held that a U.S. Army private who was physically and sexually assaulted by other inmates while confined to a military correctional facility was injured "incident to his military service." *Id.* at 766 (quotations omitted). The court "emphasized that we construe 'activity incident to service' quite broadly." (citation omitted). Jurisdiction over the plaintiff's FTCA action was lacking because "the applicability of *Feres* and its Ninth Circuit progeny [was] clear." *Id.*

**Becker v. Pena.** In *Becker v. Pena*, No. 95-36172, 1997 WL 90570, at *1 (9th Cir. Feb. 28, 1997), the Ninth Circuit held that *Feres* barred a Coast Guard member's FTCA action alleging sexual harassment by her superior officers. "While the acts of sexual harassment served no military purpose," the Ninth Circuit still concluded that "they were incident to Becker's military service." *Id.* The court noted that "[v]irtually all of the harassing conduct occurred during working hours on the Coast Guard base," and "[the plaintiff's] harassers were predominantly superior in rank and were subject to military discipline for harassing her." *Id.* Therefore, the Ninth Circuit held that the plaintiff's injuries were incident to her military service and her claims under the FTCA were barred under the *Feres* doctrine.

Courts outside the Ninth Circuit have also applied the *Feres* doctrine to preclude

13

tort claims when confronting facts similar to this case. The following four cases are analogous to this case.

*Corey v. United States*. In *Corey v. United States*, No. 96-6409, 1997 WL 474521 (10th Cir. Aug. 20, 1997), the Tenth Circuit held that *Feres* barred the tort claims of an enlisted service member who was subjected to a continued history of sexual harassment and was sexually assaulted by a superior officer while on a temporary duty assignment. *Id.* at *1. AFOSI investigated the plaintiff's claims, but she alleged a cover up and a general failure to protect sexual assault victims. *Id.*

Pointing out that *Feres* applies broadly to all injuries "that are even remotely related" to the plaintiff's status as a service member, the Tenth Circuit held that the injuries arose from activity incident to service. *Id.* at *5. Particularly significant was that "Ms. Corey's participation in the party at which her injuries occurred was a consequence of her military status." *Id.* That the assault occurred while the plaintiff was "off-duty" or "during a recreational activity [did] not prevent the application of *Feres*." *Id.* The parties were both "subject to military discipline and control" when the injuries occurred. *Id.* And that meant that allowing the plaintiff's lawsuit would require the district court to pass judgment on the military's investigation and disciplinary decisions:

> [W]e would be inviting the district court to second-guess the military decisions made concerning the conduct that occurred at the on-base party. Furthermore, we would be authorizing the court to review the Air Force's application (or non-application) of its own rules of military discipline. This is precisely the type of second-guessing and intrusion into military affairs that the Feres doctrine was designed to prevent. "To permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions . . . ."

*Id.* (quoting *Shearer*, 473 U.S. at 58). And so the Tenth Circuit held that "the injuries suffered by Ms. Corey were at least 'remotely related' to her military status," thus barring her damages suit under *Feres*. *Id.*

*Mackey v. United States*. In *Mackey v. United States*, 226 F.3d 773 (6th Cir.

2000), the Sixth Circuit held that *Feres* barred the tort claims of a U.S. Air Force captain suing her superior officers for sexual harassment. Notably, the Sixth Circuit explained that application of the *Feres* doctrine would not "completely deprive[] [the plaintiff] of a remedy in light of the availability of discipline through the Uniform Code of Military Justice and the existence of benefits programs available to injured service members." *Id.* at 777 (citations omitted).

**Stubbs v. United States.** In *Stubbs v. United States*, 744 F.2d 58 (8th Cir. 1984), the Eighth Circuit held that the *Feres* doctrine applied to wrongful death claims brought by the estate of a U.S. Army private who was lured to the latrine supposedly for cleaning duty and then sexually assaulted by a drill sergeant. *Id.* at 59. While "the sexual harassment certainly served no military purpose," the soldier's injuries were nonetheless incident to service because there was "a relevant relationship between [her] activity at the time of the incident and her military service . . . ." *Id.* at 60. Furthermore, the lawsuit threatened to impair military discipline by "directly question[ing] the disciplinary decisions of superior officers . . . . All of these inquiries [went] to the heart of military decisionmaking and discipline, and thus [were] barred by *Feres*." *Id.* at 61.

**Perez v. Puerto Rico National Guard.** In *Perez v. Puerto Rico Nat. Guard*, 951 F. Supp. 2d 279 (D.P.R. 2013)—a case with facts strikingly similar to those alleged by Colonel Spletstoser—the court held that the claims of a National Guard member who was allegedly raped and subjected to years of sexual harassment by her military superior, both on-base and in private hotels during temporary duty assignments, were incident to service and therefore barred by the *Feres* doctrine. *Id.* at 290-91. "Allowing such claims, as in the present matter, to proceed in civilian courts, whether state or federal, would disrupt the relationship of the soldier and his superiors and threaten military discipline and effectiveness." *Id.* at 294.

### 2. Application of the *Feres* doctrine

Much like the plaintiff in *Stauber*, Colonel Spletstoser has alleged—and her sworn

declaration repeats—that General Hyten continuously harassed and assaulted her for one year, both on-base and off-base, both during and after working hours. Multiple alleged incidents occurred when she was working in her STRATCOM office, while others purportedly happened when she was on official TDY assignments in her military capacity as General Hyten's CAG Director. These allegations describe activity incident to Colonel Spletstoser's military service and therefore fall within the broad reach of the *Feres* doctrine.

*First*, as in *Stauber*, "[t]o examine the relationship between on- and off-base events in this case, beyond determining that the conduct involved was incident to service, would result in an impermissible intrusion upon military matters." *Stauber*, 837 F.2d a 400. Still, the fact that some of the alleged incidents occurred off-base is not controlling here any more than it was in *Costo*, 248 F.3d at 868; *Bon v. United States*, 802 F.2d 1092, 1095 (9th Cir. 1986); *Stauber*, 837 F.2d at 400; or *Perez*, 951 F. Supp. 2d at 290-91. By definition, TDY involves the performance of military duties away from the service member's permanent duty station.[10] And for each alleged incident that occurred off-base, there is no dispute that Colonel Spletstoser was at the location only because she was on official business, traveling at the government's expense, in her military capacity as a representative of STRATCOM.[11]

---

[10] Joint Travel Regulations at A-22, https://www.defensetravel.dod.mil/Docs/perdiem/JTR.pdf (last visited Aug. 24, 2020).

[11] As mentioned above, although trying to elide her claimed injuries' service connection, Colonel Spletstoser's declaration shows that connection. *See, e.g.*, ECF 28-1, Spletstoser Decl. ¶ 7 ("I was assigned to United States Strategic Command ('STRATCOM')"); ¶ 9 ("Gen. Hyten ('Hyten') became STRATCOM Commander and retained me as his CAG Director"); ¶ 10 ("STRATCOM, as a combatant command operates at the strategic level, it's [*sic*] stated mission is to deter strategic attack and employs forces, as directed, to guarantee the security of our nation and our allies"); ¶ 18 ("While serving with STRATCOM, I was both assaulted and battered by Hyten"); and ¶ 19 ("After joining STRATCOM, I attended trips"); *see also id.* ¶ 22 (Hoover Institute trip); ¶ 31 (Naval Post Graduate School trip); ¶ 38 (trip to attend the Joint Warfighting Analysis Center and other official events); ¶ 43 (Pacific Command trip to Seoul, South Korea); ¶ 47 (trip to London, England for the Schriever Wargame and the

16

*Second*, with regard to whether the alleged incidents occurred during work hours or were related to working conditions, this case involves exactly the kind of ambiguity the Ninth Circuit says requires applying *Feres* "to the whole course of conduct." *Lutz*, 944 F.2d at 1487. Some of the alleged misconduct occurred in the office during working hours. Colonel Spletstoser has alleged at least five incidents that occurred in the office. *See* Compl. ¶¶ 41, 43 (alleging two unwanted gestures in STRATCOM office, which were allegedly repeated "an additional three times"). Other alleged incidents occurred when Colonel Spletstoser was supposedly "off-duty." But given that Colonel Spletstoser was the CAG Director to a four-star general who was, at the time, responsible for the Nation's nuclear deterrent, it is difficult not to view their entire professional relationship as constituting "working hours." At any rate, taking "the whole course of conduct," *Feres* applies. *Lutz*, 944 F.2d at 1487. Moreover, the allegation that Colonel Spletstoser was continuously harassed by her commanding officer for a full year and then retaliated against—in the form of negative performance evaluations, an AR 15-6 investigation, a formal reprimand, being relieved of her duties, and forced to retire from the military because she refused his alleged sexual advances—directly relates to "working conditions."

*Third*, because Colonel Spletstoser is suing her commanding officer, her claims encamp in the heartland of *Feres* concerns about civilian courts undermining the commander-subordinate relationship. *See Lutz*, 944 F.2d at 1486 n.12 (explaining that "in light of the widely acknowledged practice in the military of superior officers treating subordinates severely and in a manner which many civilians would find harassing, the officer-subordinate relationship may be one factor informing [the court's] consideration of whether the activity was incident to military service") (quotations omitted).

*Finally*, AFOSI investigated Colonel Spletstoser's allegations, and the military

---

Combined Space Ops Principals' Board); ¶ 52 (trip to Halifax, Nova Scotia for the Halifax International Security Forum); ¶ 57 (trip to Reagan National Defense Forum in Simi Valley, California).

concluded that the evidence yielded no basis for any disciplinary action against General Hyten. Colonel Spletstoser's action simply cannot proceed in this Court without scrutinizing or undermining the military's investigation and disposition of her sexual misconduct claims. *See Stauber*, 837 F.2d at 399; *see also Washington v. United States*, No. 92-56330, 1993 WL 471790, at *4 (9th Cir. June 11, 1993) (explaining that in *Lutz*, the fact "that the subordinates' misconduct had not been the subject of military discipline" was a "critical" distinction from other cases that applied *Feres* in order to avoid judicial encroachment on military decisions). Colonel Spletstoser now turns to this Court to further pursue what she failed to obtain through the specific channels that Congress and the military authorized. She asks this Court (and potentially a jury of civilians) to act as a super-arbiter of the basic issue that has already been resolved by the military's investigation and disciplinary process: the validity of her sexual misconduct claims against General Hyten. The *Feres* doctrine exists to prevent exactly this kind of judicial second-guessing of the military's disciplinary judgments. *See Stauber*, 837 F.2d at 400 (*Feres* prohibits judicial review "that would, even remotely, examine military decisions") (citation omitted).

Colonel Spletstoser's pending FOIA lawsuit confirms that she seeks to relitigate the military's handling of her sexual misconduct claims. In that action, she asserts a "compelling and immediate need" for all records related to the military's investigation and disposition of her claims against General Hyten because this evidence is supposedly "essential" to pursuing her damages claims here. *See Spletstoser v. U.S. Dep't of Defense*, No. 1:20-cv-731-CKK (D.D.C.), ECF No. 1, ¶¶ 40, 96-97, 110-11. In the FOIA action, Colonel Spletstoser seeks, among other things, "any and all statements and documents underlying the sexual assault investigation into General Hyten"; "any and all documents or recommendations provided by the Staff Judge Advocate . . . concerning the disposition of charges"; and "all electronic mail (e-mail) communication reviewed by the Air Force Office of Special Investigations (OSI) in the course of conducting the investigation." *Id.* ¶¶ 26, 39. Additionally, she has demanded the emails of various senior

18

Department of Defense and high-ranking military leaders, including email correspondence between:

- General Hyten and the General Court-Martial Convening Authority, General James Holmes, *id.* ¶ 46;

- Former Secretary of the Air Force Heather Wilson and former Acting Secretary of the Air Force Matthew Donovan, General Dave Goldfein, and General Steven Wilson, *id.*;

- Former Chairman of the Joint Chiefs of Staff Joseph Dunford and former Acting Secretary of the Air Force Matthew Donovan, General Dave Goldfein, and General Steven Wilson, *id.*;

- Former Vice Chairman of the Joint Chiefs of Staff Paul Selva and former Acting Secretary of the Air Force Matthew Donovan, General Dave Goldfein, and General Steven Wilson, *id.*;

- General Hyten and former Secretary of the Air Force Heather Wilson, former Acting Secretary of the Air Force Matthew Donovan, General Dave Goldfein, General Steven Wilson, former Chairman of the Joint Chiefs of Staff Joseph Dunford, and Vice Chairman of the Joint Chiefs of Staff Paul Selva, *id.* ¶ 47;

- General Hyten and former Acting Secretary of Defense Patrick Shanahan, *id.*; and

- General Hyten and Secretary of Defense Mark Esper, *id.*

Colonel Spletstoser also requests officer evaluations "that demonstrate the rating chain of command" of General James Holmes from 2000 to the present—i.e., the last twenty years. *Id.* ¶ 48. Presumably, Colonel Spletstoser seeks evidence about the chain-of-command to prove her allegation in this Court that former Air Force Secretary Wilson improperly delegated authority over the military's investigation to General Holmes (himself a four-star general) because he was supposedly junior to General Hyten—a decision that Colonel Spletstoser previously alleged "caused an inadequate and conflicted investigation." *See* Compl. ¶¶ 95-96. Of course, none of this information—the officer evaluations, the emails of high-ranking Defense Department and military leaders,

19

the evidence reviewed by military investigators, and the disposition recommendations of the Staff Judge Advocate—would be "essential" to Colonel Spletstoser's claims in this action unless she intended to relitigate the military's investigation and disposition of her sexual misconduct allegations. This is precisely the kind of "congressionally uninvited intrusion into military affairs" that *Feres* does not permit. *United States v. Stanley*, 483 U.S. 669, 683 (1987).

Taken together, all of the factors discussed above demonstrate a relevant relationship between Colonel Spletstoser's alleged injuries and activity incident to her military service. In light of the abundant Ninth Circuit and other authority applying the *Feres* doctrine broadly to similar factual contexts, Colonel Spletstoser cannot proceed with her damages lawsuit against her commanding officer in this Court.

**C.** **Even apart from Colonel Spletstoser's strategically omitted allegations, the amended complaint still does nothing to alter the Court's conclusion that this lawsuit falls within the broad reach of the *Feres* doctrine.**

While Colonel Spletstoser excised many of the harmful details in her amended complaint, it is still apparent from that pleading—and her sworn declaration, which remains in the record—that she sues for service-related injuries. Colonel Spletstoser alleges that she was General Hyten's CAG Director, he was superior in rank, and that her alleged injuries occurred while they were attending a national *defense* forum as representatives of STRATCOM. *See,* FAC ¶¶ 23, 30. The amended complaint acknowledges that Colonel Spletstoser attended the Reagan National Defense Forum in her military capacity as General Hyten's CAG Director. *Id.* ¶ 30 ("STRATCOM was invited"). It certainly does not allege that Colonel Spletstoser attended in her personal capacity or that, for example, she traveled at her own expense.

In that respect, Colonel Spletstoser's allegations resemble those of the plaintiff in *Corey*, who was sexually assaulted by a superior officer during a TDY assignment. *See Corey*, 1997 WL 474521, at *5. Colonel Spletstoser's allegations align even more

closely with those of the plaintiff in *Perez*, who was harassed and sexually assaulted by her military superior while staying in private hotels during military training exercises and TDY assignments. *See Perez*, 951 F. Supp. 2d at 290-91. "The incident occurred off-base at a hotel paid for by the Puerto Rico National Guard. Plaintiff was at the hotel due to the annual training and for those reasons it arose out of a military activity." *Id.* at 291. And so the plaintiff's injuries arose from activity incident to her military service. Colonel Spletstoser's amended complaint therefore, on its face, fails to distinguish her claims from the military sexual assault precedents discussed earlier. Accordingly, her claims remain *Feres*-barred.

## II.   The FTCA's "Intentional Tort" Exception also Bars any Finding of Liability against the United States.

The United States has been substituted for General Hyten as the defendant in this action pursuant to the Scope of Employment Certification (Docket No. 23-1) and 28 U.S.C. § 2679(d). "The United States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, in fact, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn v. Haley*, 549 U.S. 225, 231 (2007).

Along with the *Feres* doctrine, the FTCA's "intentional tort" exception, however, bars government liability here. *See* 28 U.S.C. § 2680(h). "The [FTCA's] waiver of sovereign immunity does not apply to 'any claim arising out of assault or battery[.]'" *Shearer*, 473 U.S. at 54 (brackets omitted) (quoting § 2860(h), and applying it to bar claims arising out of the kidnapping and murder of a service member). Congress intended "that § 2680(h) would bar claims arising out of a certain type of factual situation—deliberate attacks by Government employees." *Id.* at 55. Colonel Spletstoser's claims of unwanted touching and sexual assault fall squarely within the intentional tort exception, thus precluding FTCA liability. *See Olsen v. U.S. ex rel. Dep't of the Army*, 144 F. App'x 727, 731 (10th Cir. 2005) (FTCA's intentional torts exception barred assault and battery claims of alleged victim of a sexual assault by a military recruiter).

**CONCLUSION**

This Court has already ruled that Colonel Spletstoser's basic claim as related in the initial complaint and her sworn declaration triggers the *Feres* bar. Only two questions remain then: Has she now alleged some *different* facts showing an injury outside the *Feres* bar? The answer is clearly "no." Colonel Spletstoser simply deleted the very allegations this Court relied on to find that jurisdiction over her claims is lacking. That leaves only the question whether this "strange maneuver" evades the otherwise applicable bar. *Schneider*, 412 F.3d at 199. The answer, as demonstrated above, is again "no." Colonel Spletstoser has not overcome the admissions in her original complaint. Her sworn declaration remains in the record and repeats many of the facts alleged in the original complaint. As a result, this Court is not required to ignore its prior decision that the suit is *Feres*-barred. The Court should therefore dismiss the amended complaint for lack of subject matter jurisdiction.

Dated: August 24, 2020      Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch

/s/ *Reginald M. Skinner*
Senior Trial Attorney
Virginia State Bar. No. 48785
Torts Branch, Civil Division
United States Department of Justice

Counsel for the United States of America